IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

HANCOCK COUNTY BOARD OF
SUPERVISORS
    Plaintiff

v.                                            CAUSE NO. 1:10CV564 LG-RHW

KAREN LADNER RUHR, in her
official capacity as HANCOCK                    CONSOLIDATED WITH:
COUNTY CIRCUIT CLERK and                       3:11CV121 LG-RHW
HANCOCK COUNTY REGISTRAR,                3:11CV122 LG-RHW
HANCOCK COUNTY REPUBLICAN               3:11CV123 LG-RHW
EXECUTIVE COMMITTEE, and                   3:11CV124 LG-RHW
HANCOCK COUNTY DEMOCRATIC               4:11CV33 LG-RHW
EXECUTIVE COMMITTEE                           5:11CV28 LG-RHW
    Defendants                                     5:11CV29 LG-RHW
                                                   5:11CV30 LG-RHW

JIM HOOD, ATTORNEY GENERAL
FOR THE STATE OF MISSISSIPPI,
*EX REL.* THE STATE OF
MISSISSIPPI
    Intervenor

## ORDER GRANTING MOTIONS TO DISMISS

BEFORE THE COURT are Motions to Dismiss filed by defendants Simpson, Warren, Wayne, Amite, and Adams Counties, and by the intervenor, Jim Hood, Attorney General for The State of Mississippi. Plaintiffs filed complaints for declaratory and injunctive relief seeking to enjoin Mississippi County elections in 2011. On remand from the Fifth Circuit Court of Appeals, the issue now before the Court is whether this case is live or moot. Having considered the briefs and arguments of counsel, the Court concludes that this consolidated action is moot. Accordingly, it must be dismissed.

**BACKGROUND**

The background of this case centers upon a cyclical conundrum that theoretical could confront Mississippi county election officials every twenty years. In 2011, upon the receipt of the U.S. Census Bureau 2010 decennial census data, the cycle repeated and the quandary reemerged.

Each Mississippi county consists of five supervisor districts and is governed by a Board of Supervisors. The last election cycle for county officials and supervisors began on January 1, 2011, when candidates started submitting qualification applications and fees. The qualification deadline for 2011 elections was March 1, 2011. County primary elections were set for August 2011, and the general elections were set for November 2011.

On or about February 4, 2011, the counties received the U.S. Census Bureau 2010 decennial census data. In response to the 2010 census data, and in compliance with the requirements of the Voting Rights Act, the respective counties began the process of redrawing voting district lines in order to correct any malapportionment. It soon became apparent however, that there would not be sufficient time to complete the redistricting process *and* obtain Department of Justice preclearance approval in time for the primary elections, much less in time for the qualifying deadlines.

Local branches of The National Association for the Advancement of Colored People ("NAACP") and African-American voters brought suit against officials in the malapportioned counties. The plaintiffs alleged that the existing districts within

each of the counties would have more than a 10% variance. This deviation would constitute a *prima facie* case of invidious discrimination. Each of the individual complaints alleged that the existing county supervisor districts violated the Fourteenth Amendment's "one person, one vote" guarantee, and sought declaratory and injunctive relief. Specifically, plaintiffs sought to delay election deadlines and the elections so that each county could complete redistricting and obtain Department of Justice preclearance before any elections were conducted.

After hearings on the motions of the defendants, this Court dismissed the now consolidated complaints on the grounds of lack of standing and failure to state a claim upon which relief could be granted. Thus, the county elections process proceeded using the then existing district lines. The dismissal was appealed to the Fifth Circuit Court of Appeals. However, by the time the matter was before the appellate court, the elections had been completed using the county district lines in existence prior to the receipt of the 2010 census and the newly elected officials had taken office.

On appeal, the Fifth Circuit Court of Appeals concluded that the plaintiffs did have standing and vacated the order dismissing the complaints. *Hancock Cnty. Bd. of Sup'rs v. Ruhr*, 487 F. App'x 189 (5th Cir. 2012). However, since it was apparent that the 2011 county elections were concluded, the appellate court could not determine upon the record whether the controversy was still live. *Id*. at 200. Therefore, the case was remanded for factual development and consideration of the issue of mootness. The court held:

-3-

> In an abundance of caution, and because more factual development is needed, we remand this consolidated case to the district court so that it can determine whether this controversy is moot or is live. If the district court determines that this controversy is moot, the court must dismiss the case. If the district court determines that this controversy is live, the court must proceed to determine whether appellants' complaints—after allowing for proper amendments—adequately state a claim upon which *post-election* relief can be granted. Of course, new pleadings will be necessary; we do not forbid new counts. But if the district court determines that the appellants' complaints have failed to state a claim for post-election relief, the court must dismiss the case.

*Id.* at 200-01.

After remand to the district court the parties were granted additional time to file motions and briefs on the issue of mootness. (Minute Entry Order, Nov. 7, 2012). The plaintiffs also filed a motion to amend their complaints and for leave to conduct mootness related discovery. (ECF Nos. 168 & 169).

## DISCUSSION

The Fifth Circuit characterized plaintiffs' complaints as seeking "broad relief," stating that they "sued to declare the [then] current supervisor district lines invalid, enjoin the qualifying deadlines, enjoin the elections, and enjoin the establishment of invalid lines." *Hancock Cnty. Bd. of Sup'rs*, 487 F. App'x at 197.

The Defendants and the Attorney General argue that this action is moot because 1) the elections plaintiffs sought to enjoin have taken place and plaintiffs did not ask for any post election relief; and 2) the "capable of repetition, yet evading review" doctrine does not apply.

At the initial hearing conducted by this Court, plaintiffs' counsel stated that the remedy they were seeking was that they "want the current districts enjoined,

election not to be held under the existing benchmark districts because they are grossly malapportioned." (Mot. Hr'g Tr. 35-36, May 13, 2011).  Counsel noted that the counties had to be given time to redistrict when they were found to be malapportioned,

> [a]nd in most of these county cases, these counties have been working to remedy the malapportionment.  They have been working on plans, and some of them have adopted plans, and some of them have submitted plans to the Justice Department, but Justice has not precleared them.  Once those plans are precleared, they should be used for this upcoming election.  The qualification deadline was March 1.  None of the plans have been precleared prior to March 1.

(*Id.* at 36).  Counsel argued that, had the counties started the redistricting process sooner, "[t]here was plenty of time between the census and the election to get it done, and there was certainly sufficient time between the time the census came out and the qualifying deadline that was set in statute to get it done." (*Id.* at 83).  Mr. Robinson, a self-represented plaintiff in the Madison County case, stated that "all that is being sought here, [is] a declaration from you, Your Honor, that the county may extend the qualification deadline in order to accommodate the approval by the Department of Justice of their new plans and then proceed with elections as previously scheduled beforehand." (*Id.* at 53).

The plaintiffs contend that the same situation giving rise to this action will occur every twenty years, and they will not have time to fully litigate the matter before the election that will occur in 2031.  Thus, the case is capable of repetition

but will evade review.[1]

## ANALYSIS

In each county in Mississippi, the 2011 election qualifying deadline passed long ago. Board of Supervisors and other county primary elections were held on August 2, 2011, and general elections were held on November 8, 2011. These elections were all held on statewide time tables established by Mississippi statutes and using district lines approved prior to the 2010 Census. Elected supervisors took office in January 2012.

Plaintiffs' complaints in these consolidated cases seek: (1) a declaratory judgment that the counties' supervisor apportionment schemes (as existing when the complaints were filed) violate the "one person, one vote" principle, (2) an injunction barring the counties from conducting their 2011 elections on the then existing supervisor lines, (3) an injunction extending the 2011 statutory candidate qualification deadline indefinitely and until new district lines are implemented, (4)

---

[1] The Attorney General made additional arguments that were not contested by the plaintiffs. Accordingly, the Court does not discuss the issue of whether it should exercise any authority it may have to grant post-election relief when only pre-election relief has been requested. Nor does it address the proposed amended complaints in its mootness analysis. The Court notes that the Supreme Court recently affirmed a three-judge panel decision denying post-election relief in the form of new state-wide elections. *Miss. State Conf. of N.A.A.C.P. v. Bryant*, No. 12-1019 & 12-1132 (May 20, 2013) (appeal of Order entered Nov. 19, 2012 in *N.A.A.C.P. v. Barbour*, no. 3:11-cv-159-TSL-EGJ-LG, ECF No. 159). Moreover, it is clear from the complaints that plaintiffs did not seek new elections.

an injunction requiring that any new district lines conform with applicable law,[2] (5) an attorney's fee award, and (6) general (but unspecified) relief. There is no request for special elections or any other post election relief.

There is no case or controversy once the matter has been resolved. A case or controversy "must exist at all stages of the litigation, not just at the time the suit was filed." *Bayou Liberty Ass'n v. U.S. Army Corps of Eng'rs*, 217 F.3d 393, 396 (5th Cir. 2000). "Generally, a request for an injunction is moot 'upon the happening of the event sought to be enjoined.'" *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012) (quoting *Harris v. City of Houston*, 151 F.3d 186, 189 (5th Cir. 1998)). "A federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue." *Ford v. Wilder*, 469 F.3d 500, 504 (6th Cir. 2006) (citations omitted). Whether a case is moot is a question of law. *Harris v. City of Houston,* 151 F.3d 186, 189 (5th Cir. 1989)

There is an exception to the mootness rule. When an issue is "capable of repetition, yet evading review" a court may decide the issue even though the circumstances giving rise to the case have ended. The "exception applies where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same

---

[2] The Court notes that the request for an injunction requiring counties to comply with the law when they redraw district lines is a claim that is not capable of effective relief. *Payne v. Travenol Labs, Inc.*, 565 F.2d 895, 897 (5th Cir. 1978) (injunctive relief merely requiring defendants to "'obey the law' cannot be sustained.").

complaining party will be subject to the same action again.'" *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 735 (2008). The Plaintiffs bear the burden of proving both elements. *Ill. State Bd. of Elections v. Socialist Workers Party,* 440 U.S. 173, 187-88 (1979). Under the exception's "capable of repetition" prong, the Plaintiffs "must show either a 'demonstrated probability' or a 'reasonable expectation,' " *Oliver v. Scott,* 276 F.3d 736, 741 (5th Cir. 2002), that they will "be subject to the same [unlawful governmental] action again," *Weinstein v. Bradford,* 423 U.S. 147 (1975). A "mere physical or theoretical possibility" is not sufficient to satisfy this prong of the exception. *Murphy v. Hunt,* 455 U.S. 478, 482 (1982).

There has been no evidence or even a suggestion that the Mississippi county election officials deliberately defied or in the future intend to defy the requirements of the Voting Rights Act. Instead, the evidence is to the contrary. Despite the time constraints imposed by Mississippi statute, the Defendants made every effort to comply with their redistricting responsibilities. Plaintiffs have merely shown that the Defendants may be presented with an opportunity to act in the same allegedly unlawful manner in the future. This is not enough. To satisfy the second prong of the exception Plaintiffs must demonstrate a reasonable expectation that the government *will* act in that manner. *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010); *See also Libertarian Party v. Dardenne*, 595 F.3d 215, 217 (5th Cir. 2010).

It is also apparent from the evidence and arguments at hearing that

Department of Justice preclearance was the primary impediment to the counties' ability to redistrict in time for the 2011 elections. This step in the redistricting process has been removed. After the United States Supreme Court's decision in *Shelby County, Alabama v. Holder*, 133 S.Ct. 2612 (2013), no county in Mississippi is required to obtain preclearance from the Department of Justice for changes to voting procedures, including new supervisor district lines. The court held that the formula in section 4(b) of the Voting Rights Act may no longer be used as a basis for subjecting jurisdictions to preclearance. *Shelby Cnty.*, 133 S.Ct. at 2631.

Decennial census data only provides a snapshot of a dynamic demographic process. The census data rapidly becomes outdated as people are born, die, and move. Likewise county demographics are not static and gradual malapportionment will usually begin the day after the census reports are published. There is little doubt that the 2020 and the 2030 census data will compel additional tweaking or perhaps total reconfiguration of malapportioned county districts. If that is the case, there is ample time for the Mississippi legislature to address and correct similar timing issues prior to the 2031 county election cycle. Finally, as noted by plaintiff Robinson, advances in information technology can be transforming and unpredictable:

> I would think that this is likely a case of first impression, these particular facts and circumstances. And I think it's in part due to technological advances that we've had in recent years and the ability, for example, of the Census Bureau to generate and provide the information in a much faster and more efficient way than they have in the past, thereby resulting in a situation such as this, which was not anticipated before now. And that is, where in a year in which the

> decennial census data is generated simultaneously in a general election year, there can be or should be an opportunity for a county such as Madison County to take that information – they are getting it quicker.  Then they have CMPDD who is able to take that information, turn it around, create maps, circulate it, post it on the Internet, get public input, conduct hearings.  It's a much easier and faster process than it has been.

(Mot. Hr'g Tr. 54-55).

In this case, when the qualifying deadline passed, and the elections were held, plaintiffs' claims seeking to enjoin those events became moot. *Wilson*, 667 F.3d at 595.  The Court finds that the plaintiffs have not demonstrated a reasonable expectation that the same circumstances would arise again.  Thus, the capable-of-repetition, yet evading-review exception to mootness is not applicable to the claims in this case.  The claims alleged in plaintiffs' complaints are moot and must be dismissed.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motions to Dismiss [191], [193], [195], [197], [199], [205] are **GRANTED**.  This consolidated case is **DISMISSED AS MOOT**.

**SO ORDERED AND ADJUDGED** this the 19th day of August, 2013.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE